New-Haven,
November,
1818.

## STORY *against* BARRELL and GILBERT.

THIS was an action of *assumpsit*, describing the defendants as late copartners in trade, under the name and firm of *Nathaniel Gilbert* & Co. The declaration contained four counts, the second of which was general, stating, that at *Norwich*, on the 2d of *July* 1812, the defendants became indebted, as traders in company as aforesaid, to the plaintiff, in the sum of 375 dollars, for so much money, at that time, had and received to the use and benefit of the plaintiff, and in law liable to pay to him said sum ; and that being so liable and indebted, they did, in consideration thereof, at said *Norwich*, afterwards, to wit, on or about the first day of *March* 1817, assume upon themselves, and to the plaintiff faithfully promise, to pay to him the sum of 375 dollars, in a reasonable time thereafter, when thereto requested. The writ was dated *February* 14th, 1817.

On the trial at *New-London, January* term, 1818, before *Swift*, Ch. J. and *Brainard* and *Goddard*, Js., the plaintiff offered in evidence the following writing, made and signed by *Gilbert* only, after the dissolution of the copartnership between him and *Barrell :* " I, *Nathaniel Gilbert*, acknowledge that I have retained in my hands of the money of *Samuel Story*, jun. [the plaintiff] the amount of a note, and the interest thereon, up to the 20th day of *December*, 1816 ; which note is signed by said *Story*, dated *December* 31st, 1811, for the sum of 1073 dollars, 94 cents, on interest from date, payable to *Nathaniel Gilbert* & Co., and is now in suit : and whereas the said *Story* claims to have paid a part of said note, which has never been indorsed, I do hereby agree and promise, whenever said suit shall be finally determined, to pay said *Story* such sum as the court shall find to have

After verdict, it is no ground of arrest, that the promise, in an action of *indebitatus assumpsit*, is alleged to have been made on a day subsequent to the date of the writ.

A partnership, consisting of *A.* and *B.*, held a note against *C.*, dated *December* 31st, 1811, for the payment of 1074 dollars, and interest. On the 2d of *July* 1812, *C.* paid to *B.* 375 dollars, which *B.* promised to indorse on *C.*'s note, but neglected so to do. On the 20th of *December* 1816, after dissolution of the partnership of *A.* and *B*, *A.* gave a writing, signed with his individual name, to *C.*,

acknowledging, that he had retained in his hands the money of *C.* to the amount due on the note, and promising to refund to *C.* such sum as, in a suit then pending on the note, the court should find to have been paid thereon. The money so retained had been received by *A.*, as a member of the partnership of *A.* and *B.*, and for their use and benefit. The suit on the note was withdrawn. *C.* then brought his action of *indebitatus assumpsit* for money had and received, against *A.* and *B.* jointly, to recover back 375 dollars so over-paid. Held, 1. That the action was well brought : 2. That parol proof of the payment to *B.* of the 375 dollars, with his promise to apply it on the note, was not precluded, in this action, by the 2d section of our statute of *Frauds :* 3. That the writing given by *A.*, in *December* 1816, was admissible in evidence, and properly constituted a part of the plaintiff's case ; and that the plaintiff was not precluded from recovering back the money paid under such circumstances, on the ground that the payment, at the time, was *voluntary.*

been paid on said note, by said *Story*, and interest thereon to the time of the judgment of said court : and I do agree and promise to save said *Story* harmless against all claims the late firm of *Nathaniel Gilbert* & Co., may have against the said *Story*, by virtue of the judgment which they may obtain on said note against him, excepting the cost which shall have accrued in said suit after this date.   It is agreed by said *Story*, that this writing shall not be used, or exhibited in evidence, in the trial of said suit on said note.   *Norwich*, 20th *December*, 1816.           *Nathaniel Gilbert*."

To the admission of this writing the defendants objected, because it was the act of one of the partners alone, after the dissolution, and could not be received to affect the other partner.   The court overruled the objection, and admitted the evidence.

The plaintiff also offered the testimony of *Elijah Pitcher*, and others, to prove, that on the 2d of *July* 1812, the plaintiff paid to *Barrell*, one of the defendants, the sum of 375 dollars, which he then promised to indorse on the plaintiff's note to *Nathaniel Gilbert* & Co., of the 31st of *December*, 1811 : to the admission of which, the defendants objected, on the ground that it was within the statue of *Frauds and Perjuries*, and did not tend to prove the issue.   But the court admitted it.

The plaintiff having offered no other proof of any express promise ; it being admitted and proved, that after the dissolution of the copartnership, *viz.* on the 20th of *December*, 1816, the balance of the plaintiff's note of the 31st of *December*, 1811, was paid, by the plaintiff, to *Gilbert*, as one of the firm of *Nathaniel Gilbert* & Co., and for the use and benefit of that firm, in pursuance of *Gilbert's* agreement contained in the writing given by him of that date ; and the action on the plaintiff's note being withdrawn, in *January* 1817 ; the defendants prayed the court to instruct the jury, that these facts did not, by law, raise a promise against both the defendants, as alleged in the declaration.   The defendants further prayed the court to instruct the jury, that although they should find the sum of 375 dollars to have been paid on the 2d of *July*, 1812, as claimed by the plaintiff ; and although they should find, that the balance of the plaintiff's note was paid to *Gilbert*, as one of the firm of *Nathaniel Gilbert* & Co., for the benefit of the firm, after its dissolution ; yet that, by

law, the plaintiff could not recover upon a joint promise against the defendants, as laid in the declaration. The court charged the jury as follows: " The plaintiff, in this action, seeks to recover from the defendants 375 dollars, which, he says, he paid on the 2d of *July* 1812, to apply on a certain note, or contract, dated the 31st of *December*, 1811, and which the defendants neglected to apply. The plaintiff contends, that he has fully supported his claim. On the part of the defendants, it is contended, he has utterly failed to prove that the 375 dollars, ever were paid, by the plaintiff to the defendants. This is a question of fact for you to decide; but however this fact may be found, the defendants contend, that the testimony offered by the plaintiff is not admissible to support either count in the declaration, and pray the direction of the court to the jury on this point. On this point, the court is of opinion, and the law is so, that the plaintiff's testimony is admissible evidence in support of the second count only, in the plaintiff's declaration, being the count for money had and received to the plaintiff's use. The defendants contend further, that the plaintiff's claim, as set up, even if proved, comes within the statute of *Frauds*, and prays the court so to instruct the jury. On this point, the court is of opinion, that the statute of *Frauds* has no application to bar the plaintiff's right to recover in this action. The defendants further contend, that the agreement offered in evidence, by the plaintiff, and signed by *Nathaniel Gilbert*, dated 20th *December* 1816, shews, that the money due by the original contract has been paid and satisfied, by the plaintiff, and that he is now, by law, precluded from a recovery in this action; and pray the court so to instruct the jury. On this point, the court is of opinion, that said agreement, accompanied with the other testimony offered by the defendants, does not, if found true, shew, that the plaintiff has paid and satisfied his original note, or contract, of 31st *December* 1811, in such manner, and under such circumstances, as to preclude his right of recovery in this action, provided he substantiates the claim set up. You will then attend carefully to the testimony, and return a verdict on one side or the other, according as you shall find. If you find for the plaintiff, your verdict will be, that the defendants did assume," &c.

" The defendants also contend, that from the agreement signed by *Nathaniel Gilbert* alone, dated 20th *December* 1816, and offered in evidence by the plaintiff, it appears, that no right of action, previous to that time, could have existed in favour of the plaintiff, for the non-application of the money to be paid on the contract ; that at that time, they have proved the copartnership was dissolved ; and that no act of *Nathaniel Gilbert* alone, at that time, could raise a joint promise ; and that, unless the joint promise, as laid in the declaration, be proved on the trial, to have arisen, or been made, before the dissolution of the copartnership, and the jury so find, the defendants will be entitled to a verdict : and they pray the court so to instruct the jury. On this point, the court is of opinion, and the law is so, that although, if the jury find the partnership was dissolved, *Nathaniel Gilbert* could not, by his individual act, make a new joint contract to bind the firm ; yet, as this action, in the second count, and to which the evidence applies, does not proceed on the ground of an actual express promise, if it be stated in the declaration and shewn, that the money was received by the firm during the copartnership, and that the indebtedness remains, a joint promise may be alleged and proved, at any time, while the joint indebtedness exists."

The jury having found a verdict for the plaintiff, the defendants moved for a new trial, on the ground of a misdirection, and the admission of improper evidence. They also moved in arrest of judgment, on the ground, that the promise laid in the declaration was after the date of the writ. Both these motions were reserved, by consent of parties, for the consideration and advice of the nine Judges.

*Goddard* and *Staples,* for the defendants, contended, 1. That the declaration was bad, because the cause of action was laid after the date of the writ. 1 *Roll. Abr.* 792. *pl.* 12. *Williams* v. *Bentkley, Moore,* 598. *Venables* v. *Daffe, Carth.* 113. *Buckly* v. *Williamson, Cro. Eliz.* 325. This defect is not cured by verdict ; and is ground for a writ of error. *Dickinson* v. *Plaisted,* 7 *Term Rep.* 470. *Cheetham* v. *Lewis,* 3 *Johns. Rep.* 42. *Waring* v. *Yates,* 10 *Johns. Rep.* 119. 1 *Chitt. Plead.* 266. The promise laid on the 1st of *March* 1817, must now be taken to be an express promise ;

and it is the only promise in the declaration, of which any breach is alleged.

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

2. That the parol testimony of *Pitcher* and others ought to have been rejected, as it was offered to prove a contract or agreement made more than three years before the commencement of the suit, within the second section of the statute of *Frauds.(a)* It is not a sufficient answer to say, that this action is not brought on any express contract or agreement, but upon a promise which the law implies from certain facts : for those facts, in such case, constitute the foundation of the action ; and to admit parol evidence in support of them, after the expiration of three years, would produce all the danger of fraud and perjury, which the statute was designed to guard against.

3. That the payment to *Barrell,* was made *voluntarily,* in satisfaction of a debt ; and for that reason, cannot be recovered back in *indebitatus assumpsit. Marriott v. Hampton, 2 Esp. Rep.* 546. S. C. *7 Term Rep.* 269. *1 New Rep.* 263. *d. e.* (*Day's* edit.) The evidence, therefore, to prove such payment, was irrelevant, and ought not to have been received.

4. That the writing signed by *Gilbert,* after the dissolution, ought not to have been received to affect his partner ; and that the direction to the jury, to find a joint promise, was incorrect. This was, on the face of it, the *individual* act of *Gilbert.* He had no power to bind his late partner. *Abel & al. v. Sutton, 3 Esp. Rep.* 108. *Lansing v. Gaine* and *Ten Eyck, 2 Johns. Rep.* 300. It does not appear, that *Barrell* had any thing to do with the settlement of the company concerns, after the dissolution. The joint indebtedness of *Barrell* and *Gilbert,* claimed by the plaintiff, never existed.

(a) 1 *Stat. Conn. tit.* 75. *s.* 2. This section, which has no corresponding provisions in the *English* statute 29 *Car.* 2. *c.* 3. is as follows : " That no suit at law or in equity shall be brought or maintained upon any contract or agreement, that shall hereafter be made, and not reduced to writing as aforesaid, but within three years next after entering into, or making the same ; or on any such contract or agreement heretofore made, [*i. e.* before *May* 1771, the time of passing the act] but within three years next after a right of action thereon shall accrue ; or if such right of action hath already accrued, such suit shall not be brought but within three years next after the first day of *June,* one thousand seven hundred and seventy one : *Provided,* that nothing in this act contained shall extend to any action of book-debt."

*Lanman* and *Brainard*, contra, insisted, 1. That the declaration was well enough. In an action of general *indebitatus assumpsit*, not brought on a written contract, the time of the promise is immaterial. 1 *Chitt. Plead.* 258. In this case, the facts stated as the ground of action, and from which the law raises the promise, were before the commencement of the suit. Further, the time of the promise alleged, was before the *return-day* of the writ, and before the sitting of the court ; which is sufficient. *Pugh* v. *Robinson*, 1 *Term Rep.* 116. At any rate, the defect was cured by verdict. *Sorrel* v. *Lewin*, 3 *Keb.* 354. *Blackall* v. *Eale*, *Carth.* 389. *Bemis* v. *Faxon*, 4 *Mass. Rep.* 263. *Allaire* v. *Ouland*, 2 *Johns. Ca.* 52. 56.

2. That the testimony of *Pitcher* and others was properly admitted. The 2d section of our statute, entitled " An act for the prevention of Frauds and Perjuries," is, in its nature, a statute of limitation, and is applicable only to an express contract or agreement, on which the suit is brought. To make it applicable to this case, would be to declare, that the general action for money had and received, could never be sustained, after three years from the time the right of action accrued ; an idea perfectly novel.

3. That the writing signed by *Gilbert*, was properly admitted : first, to shew that the payment first made was not applied on the contract ; secondly, to shew that there was no *voluntary* settlement, or, if there was, that the exception on that ground was waived ; thirdly, to repel the claim of the defendants, that the right of action was barred, as the writing contained an acknowledgment of one partner, which, though after dissolution, is sufficient to take the case out of the statute. 6 *Johns. Rep.* 267.

4. That the charge was right, as the law, from the facts, implies a *joint* promise.

SWIFT, Ch. J. In this case, it appears, that *Barrell* and *Gilbert*, the defendants, had a note against *Story*, the plaintiff, to be paid out of the avails of a certain vessel, when sold, on which the plaintiff claimed, that he had paid 375 dollars to *Barrell*. *Gilbert*, on the sale of the vessel, had in his hands sufficient money to pay the whole note ; and after the dissolution of his partnership with *Barrell*, agreed with the plaintiff to retain the amount of the note, and promised in writ-

ing to refund to him such sum as it should be found he had paid to *Barrell*, on a trial of the note then in suit. The suit was withdrawn, so that the plaintiff had no opportunity to prove what he had paid on the note to *Barrell*. The money received by *Gilbert* was for the use of himself and *Barrell*.

When a man pays money on an obligation, his only remedy is to prove and apply such payment on the obligation; and no action will lie to recover it back. No action will lie to recover back money paid, with a full knowledge of all the facts. After the dissolution of a partnership, one partner cannot do any act, by which he can subject the other to a new liability. On these principles, no action could be sustained for the money paid to *Barrell*; for it was a proper payment on the note, and *Gilbert* could not, after the dissolution of the partnership, subject him to an action for it. The withdrawing of the suit on the note was a rightful act, on the part of *Barrell*; and it could not subject him to an action for a violation of the agreement with *Gilbert*. But it now appears from the verdict of the jury, that the sum of 375 dollars was paid to *Barrell* on the note, which was never applied: it also appears, that *Gilbert* retained the same sum; that by reason of the withdrawing of the suit on the note, the plaintiff had no opportunity to prove the payment to *Barrell*, so as to give him a right to recover the money from *Gilbert*; and yet *Barrell* and *Gilbert* have received both these sums on account of the same debt. Here, the condition on which the money was paid, has not been fulfilled; the consideration for which it was paid, has failed; and though *Barrell* has done no improper act, yet as he and *Gilbert* have jointly received the money under these circumstances, it is against good conscience that they should retain it; and they ought, on principles of justice, to refund it.

It is also contended, that the declaration is insufficient, because the promise is alleged to have been made after the date of the writ.

Where the day is material, as in written contracts, and must be proved precisely as laid, such an objection would be fatal; but where the day is not material, there this objection cannot be valid. Here, the plaintiff was not bound to prove the day alleged; he might have proved any other day, and it would have been sufficient. The averring of the promise, then, on a day after the date of the declaration, does not vitiate it.

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

TRUMBULL, EDMOND, SMITH, BRAINARD, PETERS and CHAPMAN, Js. were of the same opinion.

HOSMER, J. I concur with the Court, in the opinion that the motion in arrest is insufficient.

I am equally clear, that the objection to the testimony founded on the limitation clause in the statute of *Frauds,* is of no validity.

I cannot, however, admit, that an action for money had and received is sustainable against the defendants.

It is indisputable, that the plaintiff, in the count for money had and received, cannot recover of the defendants, the 375 dollars paid to *Barrell,* on the 2d of *July* 1812, on his note due to the copartnership. This was in satisfaction of an existing debt, and is not distinguishable from any other payment.

On the 20th of *December* 1816, *Gilbert,* having refused to allow the above sum in part satisfaction of the note on which it had actually been paid, received of the plaintiff a sum equal to that note ; that is, he received 375 dollars beyond the amount due to the defendants. Whether this surplus can be recovered of the defendants on the count for money had and received, is the remaining question.

Before I enter on this enquiry, I will recur to certain facts, which have been misconceived, or were out of sight, during the investigation of this subject. The money demanded beyond the sum actually due, was paid to *Gilbert after* the dissolution of the copartnership, and without the knowledge or approbation of *Barrell. No part of it has ever come to his hands, been applied to his benefit, or received to his use.* It has ever been solely, and exclusively, in *Gilbert's* possession ; and on no legal principle could *Barrell,* if it were his desire, recover a farthing of it from *Gilbert.* Acting under this impression, when the plaintiff advanced the 375 dollars, *Gilbert,* in his individual name and character, executed a writing to *Story,* promising to repay him such sum as the court, before whom an action on the note was then depending, should determine had been paid.

In my judgment, there exist several objections to the plaintiff's recovery on the count for money had and received.

In the first place, the money, without mistake or coercion, was *voluntarily* advanced, with full knowledge that *Gilbert*

received 375 dollars, which before had been paid on the note, and which payment he refused to allow. Money paid under these circumstances cannot be recovered. *Brown* v. *M'Kinally,* 1 *Esp.* 279. *Cartwright* v. *Rowley,* 2 *Esp.* 723. *Marriott* v. *Hampton,* 7 *Term Rep.* 269. *Gates & al.* v. *Winslow,* 1 *Mass. Rep.* 65. *Bilbie* v. *Lumley & al.* 2 *East,* 469. *Bulkley* v. *Stewart,* 1 *Day* 130. In the case last cited, it was said by the court, " this action (*indebitatus assumpsit*) does not lie to recover back money voluntarily paid, on a claim which the party disputes, though he pay it expressly reserving his right to litigate his claim." On a principle of general justice and legal policy, the plaintiff is not permitted to sustain his suit in such case. He should have paid the sum, which he knew to be due from him, and stood on his defence against the residue demanded.

The express engagement of *Gilbert* furnishes a second objection against the plaintiff's demand, in my opinion, utterly irresistible. *Expressum facit cessare tacitum.* No action for money had and received can be sustained, even against *Gilbert.* The law will never *imply* a contract, when the parties, with perfect fairness, have entered into an express agreement. In reply to this, it has been said, that the defendants, by withdrawing their action on the note, have prevented the happening of an event, *i. e.,* the determination of the court in relation to the payment, without which no suit can be maintained on *Gilbert's* contract. I do not admit the correctness, or supposed force, of this position. *Barrell* violated no obligation in withdrawing the suit. Undoubtedly, *Gilbert* did ; and his contract furnishes a remedy against him. Be this, however, as it may ; the express agreement *remains open and in force ;* and whether there is, or is not, any other remedy, the law will not raise an implied contract.

There remains another objection against the plaintiff's recovery, to which no satisfactory answer has been given. The partnership connexion between *Barrell* and *Gilbert* had terminated, before the sum demanded of the plaintiff was advanced. The money, I repeat, was not delivered to *Gilbert* with the knowledge or approbation of *Barrell,* and no part of it has come to his possession or use. " The moment the partnership ceases, (said Lord Kenyon in *Abel & al.* v. *Sutton,* 3 *Esp.* 108.) the parties become distinct persons ; they

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

are tenants in common of the partnership property undisposed of, from that period ; and if they send any securities, which did belong to the partnership, into the world, after such dissolution, all must join in doing so. It never could be allowed, that one might make another his debtor against his will. When a man takes a partner, he takes him *for better for worse ;* he reposes confidence enough, and places himself sufficiently in the power of the partner, during the partnership. To contend, that this liability to be bound by the acts of his partner, extends to a time subsequent to the dissolution, is, in my mind, a monstrous proposition. A man in that case could never know when he was to be at peace, and retired from all the concerns of the partnership, if one partner was to have the power of binding another long after the dissolution of the partnership."(*a*) In *Hackley & al.* v. *Patrick,* 3 *Johns. Rep.* 528., it was adjudged, that if one partner, authorized to settle the debts due from the copartnership, after its dissolution, adjusts an account, and acknowledges a balance to be due from the co-partnership, this acknowledgment will not bind his co-partner. The reason assigned is, because " after the dissolution of a copartnership, the power of one party to bind the other wholly ceases." It, then, is unquestionably clear, that no *act or contract* of a partner, after the connexion is dissolved, is obligatory on his copartner, except as to the authority impliedly existing for the collection of joint debts, or the obtaining of joint property. *Gilbert* and *Barrell* were as strangers, and each had no right to oblige the other. It was said, however, in the argument, that *Gilbert* had authority as agent to the late partnership, to receive payment on any terms he might think proper, and on this subject to bind his partner to any engagement he should make. The assertion, in my judgment, is gratuitous, and entirely destitute of foundation. *He possessed, by implication, every power requisite to the performance of his duty, and nothing more.* He could institute suits, execute receipts, collect debts, in the copartnership name ; but he could not receive money to which the partnership had no claim, and, by his contract, oblige his partner, on a contingency, to the repayment of it. The reason is plain ; *authority to this extent is*

(*a*) Vide *Kilgour* v. *Finlyson & al.* 1 *H. Black.* 155. *Lansing* v. *Gaine & Ten Eyck,* 2 *Johns. Rep.* 300.

*both unnecessary and dangerous,* and therefore, is not by law implied. Under the pretext of collecting debts, a partner might receive money on demands which had been satisfied, and by this act of his, if the company were implicated, one-rate his copartner in sums of ruinous magnitude.

After all, if the authority of *Gilbert* to do what has been contended for, were admitted, it could have no bearing on this case. He assumed on himself a *personal* obligation, which the plaintiff accepted ; and in consideration of which, he paid him 375 dollars. This contract is a law to the par-ties, of their own making, repelling every legal implication, and exclusively binding them to its own provisions.

I am satisfied, that the charge of the court was incorrect ; and that a new trial ought to be granted.

GOULD, J. The only objection, raised under the motion in arrest of judgment, is, that the promise is alleged to have been made *after* the date of the writ. But this objection confounds a well established distinction in pleading, *viz.* That any repugnancy, or mistake, in a *material* point, is incurable ; but that an *immaterial* one is aided by verdict. The present case falls within the latter branch of the distinc-tion : for though, in the action of *assumpsit,* the promise is, upon the face of the declaration, always taken to be an express one ; yet the day, on which it is alleged to have been made, is never material. For the time of *making* a promise forms no part of the description of the contract, though the time of *payment* always does. In pleading re-cords, and written instruments, the rule is different ; because the date enters into the *description* of the record, or instru-ment, itself. And in any case, the day laid in the declara-tion, though not originally material, may be made so, by the subsequent pleadings. But here, there are no pleadings, that can have that effect. The question arises, solely, upon the declaration ; and in such cases, the rule is, that if no day, an impossible day, or a future day, is laid, it is aided by verdict. 3 *Keb.* 354. *Carth.* 389. The principle of the rule is, that after verdict, every fact, or circumstance, which, in evidence, could have been necessary to warrant the finding, must be presumed to have been proved to the jury ; and of course, to have been proved by legal evidence. In this case, therefore, the promise being found, we must pre-

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

sume, that a promise *before* the date of the writ was proved : for evidence of a *subsequent* promise would not have been legally admissible.

The question remains, whether there are sufficient grounds shown for a new trial ? I think not. I am wholly unable to perceive any relevancy in the objection, that the admission of the evidence of *Pitcher* and others was inconsistent with the limiting clause in our statute of *Frauds.* That clause, which is, essentially, a statute of limitations, provides, that " *no suit* shall be brought, or maintained," upon any unwritten agreement " but within three years," &c. The parol evidence admitted was, that in *July* 1812, the plaintiff paid to *Barrell,* 375 dollars, which *Barrell* then promised to indorse on the plaintiff's note to *N. Gilbert* and Co. But the action is not founded upon *Barrell's* promise to indorse the 375 dollars, nor, indeed, upon any special promise ; but upon the *implied* one, arising from the eventual over-payment of the note. But this implied promise did not, and could not, arise, at any rate, till the last payment made to *Gilbert,* in *December* 1816 ; nor, as I conceive, till the suit on the note was withdrawn. The receipt of the 375 dollars, by *Barrell,* and his promise to indorse it, are only a part of the *res gesta,* from which, when completed, by the subsequent transactions, the plaintiff claims, that the law raises a promise, on the part of the defendants, to refund the excess, *ultimately received* by them. Whether such a promise results, or not, is a distinct question ; but the present objection, at all events, has no application to the case.

It is then objected, that, as the payment, which is claimed to have exceeded the amount due upon the note, was *voluntary ;* the plaintiff is, for that reason, precluded from recovering back the excess. To this, I answer, that the writing, executed by *Gilbert,* in *December* 1816, implies a plain waiver of all exception upon this ground. And it is not denied, I believe, by the counsel for the defendants, that an agreement by *Gilbert,* might have amounted, in law, to such a waiver, if the partnership between himself and *Barrell* had subsisted, at the time of the agreement. But it is insisted, that, as the partnership was, then, at an end ; *Barrell* cannot, and of course, the late company cannot, be affected by it. It must be borne in mind, however, that the writing given by *Gilbert* is not an *original* contract, intended to bind the com-

pany; but an agreement, respecting the payment, which he was then receiving *for* the company, upon a note, *already due to them.* And, *as to the note,* he and *Barrell* were still, in effect, partners, the dissolution of their general partnership notwithstanding; and would have been such, if no general partnership had ever existed between them. Joint creditors are, in relation to the joint debt, due to them, always in the nature of partners. And in this case, the defendants, being, at the time of *Gilbert's* agreement, joint promisees, and having, of course, a joint interest in the debt; each of them then had, *quoad the note,* the same power to act for both, as if their original partnership had still subsisted. For *that* purpose, either of them had a right to act, as agent for both.

*New-Haven,* November, 1818.

Story *v.* Barrell.

In this view of the subject, let us consider what the nature of this latter transaction, between the plaintiff and *Gilbert,* was.

The plaintiff, being indebted, by note, to the defendant, as late partners in business, and *Gilbert,* one of the defendants, being in possession of the plaintiff's funds, it was proposed between the two latter, that *Gilbert* should retain out of those funds, the amount due upon the note. But, as the plaintiff claimed, that he had already paid 375 dollars, to apply upon the note; and as that payment was contested; it was agreed, in writing, that *Gilbert* should retain, out of the plaintiff's money, the amount of the original contents of the note, with the interest—leaving the question of over-payment to be judicially settled, in the suit, then pending upon the note: *Gilbert,* at the same time, engaging, for himself, and in his own name, to refund, if the question should be decided in favour of the present plaintiff, and to indemnify him, &c. And as it was a principal object of the parties, to have the question, as to the former payment, decided by the *court,* in which the action was pending; it was stipulated, by the present plaintiff, that this agreement should not be given in evidence in that case. What effect *Gilbert's* conditional undertaking to *repay and indemnify* the plaintiff, may have upon the question, I will, by and by, consider. For the present, I observe, that the payment to *Gilbert,* as well as the former one to *Barrell,* was for the *use* of the late company; that it was, in effect, a payment *to* them; and that they have had the benefit of both. These facts appear upon the motion. *Gilbert's* agreement, then, was not intended to cre-

ate (what it certainly could not create,) any *original* duty upon *Barrell.* It was only an arrangement, which *Gilbert,* acting, and lawfully acting, as agent for his late partner, as well as for himself, made in relation to an *existing joint* claim of theirs—a claim, in which they were still, virtually, *partners.* And as *Gilbert* clearly had a right to represent the late company, *in relation to this joint claim;* as he had a right to receive payment—to discharge the note—to compromise the demand—or to do, in general, any other act, respecting it, which he and his late partner, together, could do ; he must have had a right to receive payment, upon *terms,* or upon an understanding, or agreement, that the payment should not *prejudice* the plaintiff, in relation to any ultimate claim, arising out of the transaction, against the company. And he would have had the same right, as being a joint creditor with *Barrell,* whether any partnership in business had ever existed between them, or not. The power of each, to act for both, to this extent, is *incident* to the right of each to settle, or discharge, the demand. Now, it is certain, from the nature and scope of the agreement, that the payment to *Gilbert* was made, with the understanding, and virtually upon the condition, that it should not *prejudice* the plaintiff's rights, in the event of its proving to be an over-payment. And if there were nothing more, in the case,—the payment having been made for, and in effect to, both the defendants, and they both having taken benefit of it—this condition must have bound them both. This appears to me quite as clear, as if the over-payment had been made by a mutual mistake, and had gone to the use of both the defendants. And if so, the plaintiff's claim cannot, in my judgment, be repelled, either by the circumstance of the payment's having been voluntary, or by the objection, that one of the members of a dissolved partnership cannot, by his own sole act, create a new obligation upon the other. For the only obligation, which, upon any supposition, *Barrell* incurs in consequence of the last payment, is the implied one, that he shall refund a part of what *he himself* has received, if it shall appear, that he has received too much.

But it is finally urged, that *Gilbert's* written agreement, being a *security, substituted* for the obligation of the late company to refund, precludes the plaintiff from asserting his present claim. This objection, (however it might have

*New-Haven,*
November,
1818.

Story
*v.*
Barrell.

affected the case, if the question, as to the first payment, had been judicially decided, as contemplated in that agreement,) cannot now avail the defendants. *Gilbert's* undertaking, so far as regards the present point, was only, to refund " such sum, as the *court should find*" to have been before paid upon the note. But the court found nothing; and was *prevented from* finding any thing, by the *act of the defendants,* in withdrawing the action, then depending. I say, " the act of the defendants;" for though it does not appear, by whose personal direction, that suit was withdrawn; it must be taken to have been by the act of both the present defendants. And by this act, the plaintiff lost all remedy, in any event, upon *Gilbert's* written agreement : a judicial finding of the amount over-paid, being indispensable to a right of recovery upon that agreement. For though, where performance of a condition precedent, strictly so called, is prevented by a defendant, the plaintiff may recover, as if he had actually performed; yet the rule is totally inapplicable to the present case. Here, the amount, *to be found by the court,* was the only thing, that could, under any circumstances, be recovered under the agreement : and the defendants, by preventing such a finding, have rendered performance of the agreement, on the part of *Gilbert* himself, absolutely *impossible.*

The state of the case, then, as it now stands, is, that the object of the plaintiff, in paying the full contents of the note to *Gilbert,* has been *defeated,* and all remedy upon *Gilbert's* agreement *destroyed,* by this act of the defendants; and they still retain the whole amount of both payments, in violation of the understanding, and the virtual condition, upon which the last payment was made and received. Under these circumstances, the defendants, if they have received too much, in the whole, cannot, in conscience, retain it; nor is it competent for them to object, either that the last payment was voluntary, or that the plaintiff holds a substituted security for what may be due to him.

Motion in arrest insufficient ; and
New trial not to be granted.