THE NEW-HAVEN COUNTY BANK *against* MITCHELL and another.

Though in the case of a letter of credit, which is in the nature of an offer or proposition, and is not consummated into a contract, or obligatory upon the writer, until it is accepted, and notice of such acceptance given; yet where $A$ executed a writing, whereby he agreed with $B$, for value received, that he, $A$, would, at all times, hold himself responsible to $B$, to a limited amount, for such paper as might be endorsed by $C$, and holden by $B$, within the amount specified, without notice to be given to $A$ by $B$; and such writing was simultaneously delivered by $A$, and accepted by $B$; and $B$, on the credit thereof, discounted paper indorsed by $C$; it was held, 1. that no other acceptance by $B$, or notice thereof to $A$, was necessary to perfect the obligation of $A$; 2. that no notice to $A$ of the amount of credit given by $B$, on the paper indorsed by $C$, was necessary; this being expressly dispensed with, by the terms of the contract.

Though a contract of suretyship cannot be extended against the surety, by any implication, but must take effect according to its terms; yet a contract of this description, when founded on a valuable consideration received of the promisee, is to be interpreted by the same rules that are applicable to other contracts.

The guaranty of $A$, by its terms, made him responsible to $B$, a banking institution, for such paper as should be indorsed by the firm of $S.$ $M.$ $\&$ $G.$, and held by $B$, and bound $A$ to save $B$ harmless from all loss which $B$ might sustain, by reason of holding paper indorsed by said firm. The partnership of $S.$ $M.$ $\&$ $G.$ was afterwards dissolved; of which $B$ had notice. The partners then executed a power of attorney to $M$, who had, previously to the dissolution, transacted nearly all the bank business of the partnership with $B$, authorizing him to sign and indorse notes which might be considered necessary in the management of the concern. $M$ delivered this power to $B$; after which, $M$, by virtue thereof, continued to use the name of $S.$ $M.$ $\&$ $G.$, as drawers and indorsers of negotiable paper, which was discounted by $B$, and the proceeds credited to the firm, and applied in payment of their former indebtedness to $B$. By virtue of such power, $M$ also signed, in the name of the firm,

*New-Haven,*
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

various other notes, which were endorsed by *A*, with notice of the dissolution, and knowing that these notes were intended to be, as they were in fact, discounted by *B*, and the proceeds applied in payment of the debts and liabilities of the firm. In the course of these transactions, *M*, by virtue of said power, indorsed two notes, which were discounted by *B*, and the proceeds credited to the firm. The parties to these notes having failed, *B* sought his remedy on the guaranty against *A* ; and it was held, 1. that the guaranty, by its terms, contemplated only such paper as should be indorsed by the firm of *S. M. & G.*, as a firm, and during the continuance of the partnership ; but 2. that for the purpose of settling the partnership concerns, the partnership relation between the partners continued to subsist after the dissolution, and the notes so indorsed by *M* were, in legal contemplation, indorsed by the firm ; consequently, they were embraced within the scope and true meaning of the guaranty.

Where a clerk in a bank, called to prove notice to the firms of *S* and *M*, the indorsers of a dishonoured note, payable abroad, testified, that two notices of non-payment, for such indorsers, were received by the bank, and he made the following *memorandum* on one for the bank,—" Delivered like notice to *M*, [a member of both firms,] *June* 4th, 1839. *J. B. Teller* ;"—which was produced ; and he further testified, that he made this *memorandum*, at the time it purports to have been made, and that from the facts of receiving the notices and making the *memorandum*, he had no doubt but that he delivered such notices to the indorsers, though he had no recollection of having delivered them ; it was held, that such evidence was admissible.

The post-mark of the office in which a notice of protest was mailed, is [*prima facie*] evidence of the time when it was mailed and sent.

Where the plaintiff, to shew that notice of protest had been forwarded, in due season, from one bank to another, and from that to the indorser, introduced, without objection, proof of certain circumstances and the usage of banks, from which he claimed, that the jury had a right to infer, in the absence of all contradictory evidence, that the notice had been duly forwarded ; and the court so instructed the jury ; after a verdict for the plaintiff, it was held, that whether this evidence was legally admissible or not, yet after it had been suffered to go to the jury without objection, its admission was not a ground for setting aside the verdict.

THIS was an action of *assumpsit*, founded on a writing signed by the defendants, of the following tenor : " For value received, we jointly and severally covenant and agree with the *New-Haven County Bank*, that we will, at all times, hold ourselves responsible, to the amount of 20,000 dollars, to said bank, for such paper as may be indorsed by the firm of *Street, Mitchells & Gilbert*, and holden by said bank, and will save said bank harmless from all loss, cost or damage, which may be at any time sustained, by the said bank, to said amount of 20,000 dollars, by reason of holding paper of any description, indorsed by said firm, without demand or notice to

*New-Haven,*
*July, 1842.*

The New-
Haven County
Bank
*v.*
Mitchell.

be made or given to us, by said bank.   Dated at *New-Haven,* this 14th day of *March,* 1837.   *John S. Mitchell.*

*Elias Gilbert."*

The plaintiffs alleged, that they, on the application of *Street, Mitchells & Gilbert,* had discounted for them two promissory notes, one made by *Tilton & Lynde,* dated at *New-York,* the 18th of *May,* 1838, for $739_{\frac{47}{100}}$ dollars, payable at the *Union Bank of Louisiana,* at *New-Orleans,* twelve months after date ; the other made by *Aikin & Glass,* dated at *New-York,* the 26th of *October,* 1838, for $744_{\frac{25}{100}}$ dollars, payable at the *Branch of the Planters' Bank, Columbus, Miss.,* eight months after date : which notes were indorsed by *Street, Mitchells & Gilbert,* were duly presented for payment and protested for non-payment, and were held by the plaintiffs, wholly unpaid.

The cause was tried at *New-Haven, January* term, 1842, before *Church,* J.

After the plaintiffs had given in evidence the guaranty mentioned in the declaration, it was claimed by the defendants, that no notice had ever been given, by the plaintiffs, to the defendant, *Gilbert,* that such guaranty had been accepted by the bank ; and that until such notice had been given to both of the defendants, there could be no recovery against them.   For the purpose of proving such acceptance and notice thereof to both the defendants, the plaintiffs introduced evidence to prove, that the defendant, *Mitchell,* was a director in said bank, and had been, for a considerable time before and after the execution of the guaranty, and was well acquainted with the business and operations of the bank ; that he himself proposed to the bank to accept the guaranty and discount paper of *Street, Mitchells & Gilbert,* on the credit thereof: that *Mitchell* first signed it ; that *Gilbert* then signed it and delivered it to *Mitchell,* so signed, to be delivered to the bank ; that *Mitchell* thereupon delivered it to the bank, and it was by them accepted : that the bank acted solely on the faith and credit of said guaranty, in receiving and discounting the paper indorsed by *Street, Mitchells & Gilbert :* and that *Mitchell* was the father of one or two, and *Gilbert* was the father of another, of the members of that firm.   The defendants objected to the admission of this evidence ; but the court admitted it.

The defendants also claimed, that they had no notice of

New-Haven,
July, 1842.

The New-
Haven County
Bank
v.
Mitchell.

the discounting of the notes of *Aikin & Glass* and *Tilton & Lynde*, until within a few days before the commencement of this suit; or that they were discounted on the faith and credit of said guaranty; and therefore, the defendants claimed, that the court should charge the jury, that the defendants were not liable for the amount of the notes.

The court charged the jury, that by the terms and stipulations of the contract of guaranty, the plaintiffs were not bound to give notice, as claimed by the defendants, earlier than notice was conceded to have been given.

It was admitted, that on the 1st of *March*, 1836, the co-partnership of *Street, Mitchells & Gilbert* was formed, consisting of *Edwin Street, Edward H. Mitchell, John S. Mitchell*, jun., and *Gad S. Gilbert*, and was dissolved, on the 25th of *August*, 1837. Notice of dissolution was published in the *Express*, a newspaper printed in the city of *New-York*, where the business of the firm was transacted. The dissolution of co-partnership was as follows:

"DISSOLUTION OF CO-PARTNERSHIP.

"Notice is hereby given, that the co-partnership heretofore existing between the subscribers, under the firm of *Street, Mitchells & Gilbert*, is this day dissolved, by mutual consent. *Edwin Steel* and *John S. Mitchell*, jun., are duly authorized to settle the business of the firm.

"*New-York, August* 25th, 1837."

[Signed by all the partners.]

It was proved, that in the latter part of *August*, 1837, the president of the *New-Haven County Bank* had notice of the dissolution; and thereupon he prepared a power of attorney, to be executed by *E. Street, E. H. Mitchell, J. S. Mitchell*, jr., and *G. S. Gilbert*, authorizing *E. H. Mitchell* to manage and transact all their commercial business; to draw, accept, indorse, negotiate, pay and receive any and all bills of exchange; to make, sign and endorse notes, which might be considered necessary in the management of the concern; ratifying and confirming all the things that should be lawfully done, by their said attorney, in the premises. This instrument was dated, and duly executed, on the 1st of *September*, 1837. Previous to the dissolution, *E. H. Mitchell* had transacted nearly all the bank business of the co-partnership, at the *New-Haven County Bank;* and when said power of attorney

New-Haven,
July, 1842.

The New-
Haven County
Bank
v.
Mitchell.

was executed, he delivered it to that bank; after which he continued to use, by virtue of such power, the name of *Street, Mitchells & Gilbert*, as drawers and indorsers of negotiable paper, which was discounted by said bank, and the proceeds thereof credited to the account of said firm, and applied in payment of their former indebtedness to the bank. By virtue of said power, *E. H. Mitchell* indorsed the notes of *Aikin & Glass* and *Tilton & Lynde*, mentioned in the declaration, which were discounted by said bank, on the 12th of *November*, 1838, and the proceeds credited to said firm; the bank knowing, at the same time, that the co-partnership of *Street, Mitchells & Gilbert* had been dissolved. It was thereupon claimed, by the defendants, that said guaranty ceased, and was no longer binding upon them. The court instructed the jury that the law was so, unless the claim of the plaintiffs now to be stated, was supported.

The plaintiffs claimed, that after the dissolution, and after they had notice thereof, and before the notes of *Aikin & Glass* and *Tilton & Lynde* were discounted, *E. H. Mitchell*, by virtue of said power of attorney, in the name of the firm, signed various other notes, which were indorsed by the defendants, they well knowing of the dissolution and notice, and knowing that said notes were intended to be, as they were in fact, discounted by said bank, and the proceeds applied in payment of the debts and liabilities of the firm. And the plaintiffs offered evidence to prove these facts; to which the defendants objected. The court admitted the evidence.

The plaintiffs thereupon claimed, that if the jury should find these facts to be true, and that the defendants, by endorsing said notes, with such knowledge, treated the firm as a continuing and subsisting partnership, and had thus induced the plaintiffs to receive and discount said notes, on the faith and credit of said guaranty, the plaintiffs were entitled to recover. The court so instructed the jury.

To prove that *Street, Mitchells & Gilbert* had been duly notified and fixed, as indorsers of the note of *Tilton & Lynde*, the plaintiffs, after proving demand and protest for non-payment of such note in *New-Orleans*, on the 21st of *May*, 1839, introduced their clerk, *John Beach*, 2nd, as a witness, who testified, that two notices of non-payment of that note were received by the plaintiffs from the holder, one for the firm

New-Haven,
July, 1842.

The New-
Haven County
Bank
v.
Mitchell.

of *Street & Mitchell*, and the other for the firm of *Street, Mitchells & Gilbert*. He then produced the following original *memorandum* made by him, in the side margin of the notice of protest to the bank : " Delivered like notice to *Street & Mitchell, June* 4th, 1839. *J. B.* 2nd, teller." He also testified, that he made this *memorandum*, at the time it purports to have been made ; and that he had no doubt from that circumstance, but he, on the day mentioned, delivered to *Edward H. Mitchell*, who was one of the firm of *Street & Mitchell*, and also one of the firm of *Street, Mitchells & Gilbert*, distinct notices for each of those firms ; that he had no *recollection* of having delivered such notices, or either of them ; but from the fact that he made said *memorandum*, and from the fact that two notices, one for each firm, were received by the *New-Haven County Bank* from the bank in *New-Orleans*, he had no doubt but he delivered such notices.

The plaintiffs also offered in evidence a letter from the bank in *New-Orleans*, bearing the post-mark of that city, of *May* 22nd, 1839, and also a protest of said note, for the purpose of proving *when* the notices of protest were left in the post-office, or mailed, in *New-Orleans ;* and that this was in due season.

To all this evidence the defendants objected, as inadmissible to prove notice to *Street, Mitchells & Gilbert*. The court overruled the objection, and admitted the evidence.

It was admitted, that the note of *Aikin & Glass* had been protested for non-payment, at *Columbus, Miss.*, on the 29th *June*, 1839 ; this note having been previously sent for collection, by the plaintiffs, to their correspondent bank in *Natchez*, to be forwarded thence to the bank at *Columbus*, where it was payable. For the purpose of shewing that notice of protest had been forwarded, in due season, from *Columbus* to *Natchez*, and from *Natchez* to the *New-Haven County Bank*, the plaintiffs offered in evidence a letter, post-marked *July* 8th, 1839, containing a notice of protest, in the usual form. In connexion with this letter, the plaintiffs introduced evidence to prove, that the general usage of banks is, for the bank which causes protest to be made, to send notice thereof, by the next mail, to the bank from which it received the note or bill for collection ; and for the latter to forward the notice, by the next mail after receiving it, to its correspond-

*New-Haven,*
July, 1842.
———————
The New-
Haven County
Bank
*v.*
Mitchell.

ent bank.   The plaintiffs claimed, that from this evidence, and the distance from *Columbus* to *Natchez*, as derived from the map and the general state of the country between those places, the jury had a right to infer, in the absence of all contradictory evidence, that the notices had been mailed and forwarded, in due season, from *Columbus* to *Natchez*, and from *Natchez* to the *New-Haven County Bank*.   The court instructed the jury accordingly.

*E. H. Mitchell,* who transacted the business of said firm, at the *New-Haven County Bank,* testified, that he had no knowledge of any delay or defect of notice of non-payment, to the firm of *Street, Mitchells & Gilbert,* on either of said notes, or any other note, indorsed by, or in the name of, said firm.

The jury returned a verdict in favour of the plaintiffs, to recover the amount of the notes of *Aikin & Glass* and *Tilton & Lynde ;* and thereupon the defendants moved for a new trial, on the ground that the court erred in admitting the evidence objected to, and in the instructions given to the jury.

*R. I. Ingersoll* and *Townsend,* in support of the motion, contended, 1. That the writing on which the suit is brought, did not become obligatory on the defendants, until the plaintiffs accepted it, and gave notice to the defendants of such acceptance.   It related entirely to future and uncertain transactions ; and it could not be known whether the plaintiffs would accede to it.   If they did not, it would be of no effect ; and if they did, it was of the highest importance to the defendants to have explicit information of the fact.   It is the settled rule of law, that when a guaranty is prospective, and relates to various and uncertain transactions, the person to whom the guaranty is presented, must accept it, and give notice of such acceptance.   *Craft* v. *Isham,* 13 *Conn. Rep.* 28. *Douglass* v. *Reynolds,* 7 *Pet.* 113.   *Lee* v. *Dick,* 10 *Pet.* 482., and the other cases referred to in *Craft* v. *Isham.*

2. That it was necessary for the plaintiffs to give notice to *both* of the defendants of the acceptance of the guaranty. The defendants were not partners, but each stood on his own rights, and nothing done by or to one of them, would affect the other.   The guaranty would not become obligatory on *Gilbert,* until the plaintiffs gave him notice of the acceptance ;

and notice to *Mitchell* could not, upon any principle, impose an obligation on *Gilbert*. *Shepherd* v. *Hawley* & al. 1 *Conn. Rep.* 367.

New-Haven, July, 1842.

The New-Haven County Bank v. Mitchell.

The facts admitted in evidence to prove that the plaintiffs had given *Gilbert* notice of the acceptance of the guaranty, were wholly inadmissible for the purpose. They had no bearing on the fact to be proved. Most of them were circumstances, which took place before the acceptance; and all of them were irrelevant with reference to the point to be established. See 13 *Conn. Rep.* 41.

3. That the defendants were entitled to notice of the credits given under the guaranty, within a reasonable time after those credits were given. It is well settled, that they were entitled to such notice, unless they dispensed with it, by the terms of the guaranty. But the guaranty did not dispense with *this* kind of notice.

4. That by the dissolution of the firm of *Street, Mitchells & Gilbert*, the guaranty was wholly at an end: it was legally cancelled. It was expressly confined, in its terms, to paper "indorsed by said firm;" and could not be extended to the indorsements of the members of the firm, after the dissolution. The rule of construction to be applied to the instrument, is well settled. That rule is, that as against a surety, the contract cannot be carried beyond the strict letter of it;—that it cannot be extended, by any implication; that the claim is *strictissimi juris*. *Straton* v. *Rastall*, 2 *Term Rep.* 366. 370. *Miller* v. *Stewart* & al. 9 *Wheat.* 680. *Dance* & al. v. *Capel's* exrs. 1 *New Rep.* 34. 41. *Bacon* v. *Cheeney*, 1 *Stark. Ca.* 192. *Boston Hat Manufactory* v. *Messinger* & al. 2 *Pick.* 224. 235. To apply the rule to the case of a partnership. Suppose one of the partners goes out; the surety may lose his right of indemnity as against the very person to whom he exclusively looked. Suppose a new partner is admitted; he may be a person in whom the surety has no confidence whatever.

But it is not necessary that there should be a change of *persons*, to discharge the surety. Any material change of *relation* in which the persons stand, has the same effect. *Bigelow* v. *Bridge*, 8 *Mass. Rep.* 275. *Wardens of St. Saviour* v. *Bostwick*, 2 *New Rep.* 175. *Dance* v. *Girdler* & al. 1

New-Haven,
July, 1842.

The New-
Haven County
Bank
v.
Mitchell.

New Rep. 34.    Boston Hat Manufactory v. Messinger & al.
2 Pick. 224.

In the case of the dissolution of a co-partnersɥip, the relations of the members of it, are entirely changed, as it respects each other and the sureties.    After the dissolution, one partner cannot bind the other partners, by any new use of the partnership name. *Abel* v. *Sutton*, 3 *Esp. Ca.* 108.    *Lansing* v. *Gaine* & al. 2 *Johns. Rep.* 300.    *Sanford* v. *Mickles*, 4 *Johns. Rep.* 224.    *Collyer on Part.* 314. n.    Then the power of one partner to bind the others, wholly ceases. *Hackley* v. *Patrick*, 3 *Johns. Rep.* 536.

5. That the fact that the defendants, after the dissolution, indorsed the notes signed by *E. H. Mitchell*, under the power of attorney, did not revive the guaranty, and extend it to the two indorsements in question.    The defendants in no case indorsed the *same* paper.    *Mitchell* endorsed some notes, and *Gilbert* different ones.    The plaintiffs knew perfectly, under what circumstances those notes were signed ; and that they were not the notes of the partnership, but of the individuals who had composed the firm ; and the defendants indorsed the notes, as being signed by such individuals, not as being signed by the firm.    There was no holding out of false characters.    The contracts which the defendants indorsed, were of a different description from the contracts covered by the guaranty.    The former were notes *signed ;* the latter were *indorsements.*    The contracts which the plaintiffs made, when they received the notes signed by virtue of the power of attorney, were not contracts to which the firm of *Street, Mitchells & Gilbert* was a party.    The plaintiffs evidently did not consider that firm as a party, as they required a power of attorney, and took the notes as indorsed under the power of attorney.    The case then is simply this. The defendants guarantied the indorsements of the *firm.* The plaintiffs took the indorsements of the *individuals* named in the power of attorney.

6. That the indorsers of the two notes in question were not legally notified of their non-payment ; and if not so notified, the defendants are not liable on the guaranty.    They could not be holden, unless their principals were ; the guaranty being only a contract of indemnity, in case of failure of the indorsers.

As to the *Tilton & Lynde* note, which was payable in *New-Haven, July, 1842.* *New-Orleans.* It became due *May* 21st, 1839. To hold the indorsers, it was necessary to put notices in the post-office there, in time for the mail of the next day. *Lenox* v. *Roberts*, 2 *Wheat.* 373. And the plaintiffs must prove directly, that they have complied with this rule : the burden of proof is on them. *Lawson* v. *Sherwood*, 1 *Stark. Ca.* 134. *Scovill* v. *Kingsley*, 7 *Conn. Rep.* 234. *Robinson* v. *Ferry*, 11 *Conn. Rep.* 460. This they have not done. Secondly, there was no legal evidence that notice was given in *New-Haven* to the indorsers. The written *memorandum* of *Beach* was not admissible. It stated that like notices were delivered to *Street & Mitchell*, but said nothing in relation to *Street, Mitchells & Gilbert.* Then the parol testimony of *Beach* amounted to nothing. He could *recollect* nothing ; but a witness can testify only so far as he remembers. He may refresh his memory, in any way he pleases ; but if, after all, he recollects nothing, he can testify nothing.

The New-Haven County Bank
v.
Mitchell.

As to the *Aikin & Glass* note, which was payable in *Columbus.* It became due on *Saturday,* 29th of *June,* 1839. It was necessary that notices should be sent by the mail of *Monday, July* 1st ; and the plaintiffs must prove they were so sent. The evidence offered was wholly irrelevant ; and the court should have charged the jury to disregard it. The only evidence was as to the usage of banks. But such usage was not proper evidence in relation to the specific fact to be proved. It was entirely too remote and uncertain. Nor could the jury properly take into consideration the map, and the state of the country. They were not in evidence ; and the jury could have no judicial knowledge of them.

The objection is equally valid against the post-marks at *Natchez* and *New-Orleans.* The notice being of the essence of the contract, it ought not to rest upon presumption and inference. Legal and sufficient evidence of its existence ought to be given. *Paterson Bank* v. *Butler,* 7 *Halst.* 268.

*Baldwin* and *Kimberly,* contra, contended, 1. That as the guaranty in question imports, on the face of it, a contract *for value received,* between the defendants and the plaintiffs, no other evidence of its acceptance was necessary, than the production of the instrument.

*New-Haven,*
*July, 1842.*

The New-
Haven County
Bank
*v.*
Mitchell.

2. That if other evidence was necessary, that which was introduced was admissible and satisfactory.

3. That notice of the several discounts, from time to time, as they were made on the faith of the guaranty, was unnecessary. To require this, would be to impose a burden upon the bank, which it was the very object of the guaranty to prevent. The writing stipulates, that the defendants will, at all times, be responsible, within the specified amount, without demand, or notice to them.

4. That the power of attorney, executed by the partners, after the dissolution, and delivered to the bank, operated as a continuance of the firm in existence, so far as its dealings with the bank were concerned. *Gow on Part. c. 5. s. 2. p.* 287. *Murray* v. *Mumford,* 6 *Cowen,* 441.

5. That the defendants themselves, having treated it as a continuing firm, after the dissolution, and by their conduct and intercourse with the bank, authorized and recognized the continuance of its dealings as such, and thereby induced the plaintiffs to discount paper with the endorsement of the firm, to apply on the partnership account, were properly holden to be responsible as before.

6. That all the evidence introduced to prove the notices, was admissible, and conduced to establish the fact for which it was received. The testimony of *E. H. Mitchell,* also, was satisfactory evidence to the same point, and not objected to, by the defendants, on the trial. *Byles,* 158. *Miller* v. *Hackley,* 5 *Johns. Rep.* 375.

STORRS, J. The defendants move for a new trial on several grounds.

1. That the writing, on which the suit was brought, did not become obligatory on the defendants until the plaintiff accepted it, and gave notice of such acceptance to the defendants; and that the evidence offered by the plaintiff was inadmissible to prove such acceptance and notice.

2. That the defendants were entitled to notice of the credits given under the guaranty in question, within a reasonable time after such credits were given.

3. That said guaranty did not embrace the indorsements of the firm of *Street, Mitchells & Gilbert,* made after the dissolution of that firm.

New-Haven,
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

4. That the evidence adduced by the plaintiff, to prove notice of the non-payment of the notes of *Tilton & Lynde* and *Aikin & Glass*, should have been rejected.

1. The defendants, in support of the first ground, rely on those cases which have arisen on contracts of guaranty, contained in what are usually termed *letters of credit*, addressed by one person to another, engaging to be answerable to the latter for a credit to be given by him to a third person, in case of the failure of payment by such third person. In these cases, it has been settled, by a uniform series of decisions, that, in order to make these letters obligatory, it is necessary that notice of their acceptance should be given to the writer, within a reasonable time thereafter, by the persons to whom they are addressed. It is not intended to impugn these decisions ; the reasons on which they are founded, are most satisfactory ; and it is proper to advert to them, in order to ascertain whether they are applicable to this case. In *Douglas & al.* v. *Reynolds & al.* 7 *Peters' Rep* 113., *Story*, J., says : " A party giving a letter of guaranty has a right to know whether it is accepted ; and whether the person to whom it is addressed, means to give credit, on the footing of it, or not. It may be most material, not only as to his responsibility, but as to future rights and proceedings. It may regulate, in a great measure, his course of conduct, and his exercise of vigilance in regard to the party in whose service it is given. Especially is it important, in the case of a continuing guaranty, since it may guide his judgment in recalling or suspending it." In *Craft* v. *Isham*, 13 *Conn. Rep.* 33., *Bissell*, J., after giving substantially the same reasons, adds : " He (the writer of the letter) cannot know before-hand whether his offer of guaranty will be accepted, and if accepted, to what extent, within certain limits, he is to be held ultimately liable. He ought, therefore, to have reasonable notice, in order to charge him. In the absence of all notice, he would have a right, in the language of *Spencer*, J., (*Buchanan* v. *Hale*, 17 *Johns. Rep.* 134.) to believe that his offer had not been accepted. He would be completely thrown off his guard ; and at a distant period, when the insolvency of the principal debtor had intervened, and all hopes of indemnity were gone, he would find himself unexpectedly called on to pay a debt, which he never knew that he was liable for. Good faith and

*New-Haven,*
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

the nature of the negotiation alike require it of the party act-
ing on and accepting a proffered guaranty, to apprise the
other party of what is done, and what he is liable for."   In
the case cited from *Johnson's Rep.*, it appears to be consider-
ed, that, until notice was given by the plaintiff, that the letter
was accepted and regarded as a guaranty, it was only to be
viewed as an overture, or proposition leading to a guaranty,
which, of course, while it remained such, would not be obli-
gatory.   Now, it is very obvious, that these reasons, which,
as applicable to those cases, recommend themselves at once
to our approbation, have no place with reference to the con-
tract in the present suit.   This is not the case of a communi-
cation, in the form of a letter, sent, without any previous ne-
gotiation, by the writer, to a person, perhaps at a distance,
containing what in fact is a mere offer or proposition, which
will not form an agreement between the parties, until it is
accepted as such, and of which, when it is so sent, it is wholly
uncertain whether it will be accepted or not.   In such a case,
the mere reception of the letter, by the person to whom it is
addressed, does not, of itself, constitute an acceptance of the
promise contained in it, without some subsequent act on his
part, evincing that he accedes to the proposition.   Its recep-
tion is unavoidable—its acceptance, as a promise, optional:
its delivery is with a view to its acceptance, and must, there-
fore, necessarily precede it.   Until such acceptance, it is not
consummated into a contract, but remains a mere proposi-
tion, and there has been no meeting of the minds of the
parties.   It is the acceptance which constitutes such meeting
and consummation.   In such a case, where it is entirely un-
certain whether an agreement will be thus consummated,
and where, particularly, the contract is one of suretyship,
requiring emphatically, exactness and precision, it has very
justly been considered, that good faith and the rights and in-
terests of the party to be bound, require that the acceptance
of the contract should be notified to him, by the other party,
and that within a reasonable time, in order that he may fully
understand and exercise all his various rights and duties grow-
ing out of his obligation.   Nor is this case like those which
have been cited, in this respect, that there the consideration
was wholly executory, and the liability of the promiser de-
pended altogether on the doing of certain acts by the promi-

*New-Haven,*
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

see ; and which acts could not be foreseen, or in any measure provided for, by the promiser, unless he was apprised of the existence and extent of his obligation. But the present is a contract executed and delivered, formally, and in the ordinary manner. The promise of the defendants imports, on the face of the instrument, to be for a valuable consideration received by them of the plaintiff. The instrument was delivered to the plaintiff, by one of the defendants, being thereunto expressly authorized for and on behalf of both, and simultaneously accepted by the plaintiff. The delivery of the instrument, under these circumstances, was not an incipient step in the formation of the contract, but the result of previous negotiation and agreement, and constituted the very consummation of the contract. It was delivered and received as the evidence of the promise of the defendants, induced by their previous reception of the consideration on which it was founded. The knowledge of the defendant, by whose hands it was delivered, was, under the circumstances, the knowledge of both. A formal notice of acceptance, in addition to this, would be an act of supererogation. *McIver* & al. v. *Richardson* & al. 1 *Mau. & Sel.* 557. *Symmons* v. *Want,* 2 *Stark. Ca.* 371. *Gaunt* v. *Hill,* 1 *Stark. Ca.* 10. *Mactier's* admrs. v. *Frith,* 6 *Wend.* 103.

No such notice being necessary, the question respecting the admissibility of the evidence offered on the subject, becomes immaterial.

2. Although, if there were not in the contract in question, any particular stipulation on the subject, it might be necessary to prove notice to the defendants of the credits given under the guaranty, such notice is here expressly dispensed with, by the contract, and is, therefore, unnecessary. The defendants agree to save the plaintiff harmless on the indorsed paper therein mentioned, "without demand or notice to be given to [the defendants] by said [plaintiff.]" This could not refer to notice to which the defendants might be entitled as indorsers of the notes held by the plaintiff; because it was not contemplated that they would become such endorsers ; and must refer to the notice to which, but for this stipulation, they would be entitled to, in the capacity which they had then assumed, of guarantors. It was intended as a qualification of the duty imposed on the plaintiff under this contract.

*New-Haven,*
*July, 1842.*

The New-
Haven County
Bank
*v.*
Mitchell.

The whole scope of the instrument shews that to be the intent of the parties ; and it is the most rational one, when it is considered, that the plaintiff might well object to discount notes for the firm of *S. M. & G.*, if he was to be put to the frequent trouble and hazard of giving notice thereof to the defendants.

3. The next question is, as to the effect of the dissolution of the partnership of *S. M. & G.* on this guaranty.

It is established, as a rule, applicable, in general, to contracts of suretyship, that although they are not to be construed with any strict technical nicety, they cannot be extended by any implication, but must take effect according to their terms. *Dance & al.* v. *Capel's exrs.* 1 *New Rep.* 34. *Wright* v. *Johnson,* 8 *Wend.* 512. *Straton* v. *Rastall,* 2 *Term Rep.* 366. 370. *Miller* v. *Stewart & al.* 9 *Wheat.* 680. Contracts of this description, when founded on a valuable consideration, are not subject to the same strict and rigid rules of construction, and are to be interpreted by the same rules that apply to other contracts. *Mauran* v. *Bullus,* 16 *Peters' Rep.* 528. The promise of the defendants, in this case, imports on its face to be for a valuable consideration, received of the plaintiff. Hence, there is nothing which requires a construction more favourable for the defendants than in ordinary cases ; and the contract is to be construed according to what may fairly be presumed to have been the intention of the parties. In ascertaining that intention, it is necessary to look at the subject matter, the general usage of the business about which it is conversant, and the views and objects of the parties in making it, in connexion with the terms in which the contract is expressed.

It is conceded, that the indorsements were made by the same persons for whose indorsements the defendants agreed to be responsible ; but it is claimed, that they were not made by those persons in the capacity for which the defendants became holden for them. The cases cited by counsel, which turned on the question whether one executing a guaranty is liable, when it is sought to be enforced, by a greater or less number of persons than those to whom it was given, or for the default of a greater or less number than those on whose behalf it was given, do not, therefore, particularly apply here,

except so far as they serve to illustrate the general principles of construction, which prevail in such contracts.

*New-Haven,*
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

It is manifest, from the language of the instrument in question, that the parties contemplated only such paper as should be endorsed by the persons composing the firm of *S. M. & G.,* as a firm or partnership, and during the continuance of that partnership. The engagement is on behalf of those persons collectively, and in the capacity of partners. The terms used are wholly different from what they would have been, if paper indorsed by those four persons, without regard to any particular relation subsisting between them, had been intended. The paper is described, not as paper to be indorsed by those individuals, but by the partners *nominatim.* The incidents and qualities of paper indorsed by them as partners, would be entirely different, in several respects, from those which would attach to that indorsed by them in their individual capacity; and if it had been the intention of the defendants to assist them in any other relation than that in which they are described, it is not rational to believe, that they would not have used language clearly indicating such intention. The terms used are certainly inappropriate to that object. It would scarcely be claimed, that the contract was intended to embrace both paper indorsed by them in their partnership, and also in their individual capacity; and yet such must be the construction, if it is not limited to the former, which is embraced in terms. This view is much strengthened, by the following authorities, a detailed examination of which is unnecessary, as this point has not been strongly contested. *Simson* v. *Cooke, J. B. Moore,* 588. S. C. 1 *Bing.* 452. *Myers* v. *Edge,* 7 *T. R.* 254. 4 *B. & P.* 34. *Theobald on Prin. and Su. ch.* 4. 2 *Pick.* 235. 5 *B. & P.* 175. 8 *Mass. Rep.* 275. 2 *B. & A.* 431. 2 *Saund.* 412. 4 *Taunt.* 593.

We are, therefore, brought to the question, whether the indorsements of *Street, Mitchells & Gilbert,* in the present case, were made during the continuance of the partnership between them, within the fair meaning of this guaranty.

The defendants claim, that the dissolution of the partnership put an end to its continuance, and to the powers of the partners, by virtue of said relation; and that neither of them could thereafter bind the co-partners, as such, by his indorse-

*New-Haven,*
July, 1842.

The New-
Haven County
Bank
*v.*
Mitchell.

ments in their name : that the endorsements were made, in this case, by virtue of a special authority, subsequently conferred, and not of the power which *E. A. Mitchell* had, as a partner : that it is as if he had then been empowered to do any other act not in any manner connected with the former partnership affairs : and that said endorsements should be considered to be made, not by the firm of *S. M. & G.*, but by the persons who had composed that firm, unconnected by any partnership relation ; and that, therefore, they are not embraced by the guaranty in question.

Considering, in the first place, the dissolution in this case to have been general and unqualified in its terms, it is not true, that it would entirely end the continuance of the partnership, or the powers and authorities of the partners, as such : it could not be correctly said, that the partnership then ceased to exist. Neither of the partners could, indeed, afterwards employ the property or credit of the partnership in any transaction or enterprize newly commenced or undertaken, nor originate or make any new contract or obligation, which would be binding on the partnership. But, for certain purposes, the partnership relation between the parties, and their powers and authorities, would continue to exist. It would be necessary that the affairs of the partnership should be arranged and settled ; and, for that purpose, that the debts due to the partnership should be collected, and its property obtained and secured ; the unliquidated debts of the partnership adjusted ; the partnership funds and effects applied to the payment of the partnership debts ; and such discharges, receipts and instruments given, as would be necessary for these purposes : and it is very clear, that the dissolution of the partnership would, in the language of Judge *Story*, " leave every partner in possession of the full power to do these acts." *Story on Part. c.* 14. For these purposes, the connexion between the partners subsists, and the partnership continues between them ; and until these objects are accomplished, it cannot be said, that the partnership is terminated. *Gow on Part. c.* 5. §2. *p.* 231. *Story on Part.* §325., and authorities cited 2 *Conn. Rep.* 677. It is undoubtedly true, that one of the partners would not, after the dissolution, continue to have power to indorse, in the name of the firm, a note or bill, which should be binding on his co-partners, un-

less by the terms of the dissolution, they should specially con- *New-Haven,* July, 1842.
fer such power on him. But it is obvious, that, after such
dissolution, it may be discovered to be necessary, or, at least, The New-Haven County Bank *v.* Mitchell.
highly desirable, for the purposes of settling the partnership
concerns speedily and advantageously, to have the partners,
or some of them, invested with the power of indorsing and
negotiating bills or notes, which are held by the firm ; and
we are of the opinion, that an indorsement by one of the
partners, by virtue of a power executed after a dissolution,
under such circumstances, would fairly be embraced within the
scope and true meaning of the guaranty in question. The
indorsement would be authorized by the partners—in the
proper business of the partnership—before its final termina-
tion—to accomplish the same objects for which such paper
was endorsed by the firm before the dissolution ; and it con-
fers the same power which each partner previously possessed.
This appears to us to be properly a partnership transaction,
and occurring before the partnership had terminated, in that
sense which must have been contemplated by the parties to
the guaranty in this suit. The partnership still continuing to
exist, although to a more limited extent, there seems to us to be
no substantial, and we know of no technical, objection, to the
conferring upon the partners, or either of them, a power to
act for them, which they had not before possessed, or which
had become merely suspended by circumstances, so long as a
new partnership could not be fairly said to be created. This
surely could not be termed the formation of a new partner-
ship, but was only a continuance of the former one. If the
power of either partner to endorse notes for the firm had,
after the execution of the guaranty, been, for any cause, sus-
pended by the partners, (and such power is not indispensable
to the existence of a partnership, *Gow, ch.* 2. §2. *p.* 48. 49.)
and had been subsequently revived before the dissolution,
would it admit of a doubt, whether indorsements afterwards
made would be covered by the defendants' guaranty ? The
power of the partners to indorse is an implied power, which
is held to be revoked, by the dissolution ; but when expressly
conferred, subsequently, and before the termination of the
partnership, for the partnership purposes, it would seem to
savour too much of refinement, and indeed to view it in a
false light, to consider it the act of the partners as mere in-

New-Haven,
July, 1842.

The New-
Haven County
Bank
v.
Mitchell.

sulated individuals, and not knit together by their partnership connexion. This view corresponds with the acts of all the parties concerned, as presented on the motion, and appears to be the construction which they themselves put on the transaction, and the light in which they considered it ; while it protects the defendants from the imputation of fraud, for which, otherwise, there might be a strong colour.

If the power to *E. A. Mitchell* to endorse on behalf of the partners, was conferred by them, when the dissolution took place, there is no doubt that all the partners would be held by his endorsements, made in pursuance of it ; and on no principle, in our opinion, could it be claimed, that such indorsements would not be within the fair meaning of this guaranty. *Newsome* v. *Coles* & al. 2 *Campb.* 617. *Burton* & al. v. *Issitt,* 5 *B. & Ald.* 267. *Coll. Part. b.* 3. *c.* 1. *s.* 3. *Kilgour* v. *Finlyson* & al. 1 *H. Bla.* 155. *Heath* v. *Sansom* & al. 4 *B. & Adol.* 172. We think, therefore, that, on the facts admitted, and claimed to be proved, in this case, whether the power was conferred, when the dissolution took place, or subsequently, there is no error in the charge of the court below, on this point, that requires a new trial.

4. *Beach,* the teller of the plaintiff, testified, that two notices of non-payment of the note of *Tilton & Lynde* were received from the holder of the note, one for the firm of *S. & M.,* and the other for the firm of *S. M. & G.,* (the indorsers,) and that although he had no recollection of having delivered said notices to *E. A. Mitchell,* excepting from the fact that said notices were so received, and also from the *memorandum* produced, made at the time it purports, which states, that, on the day therein mentioned, he delivered like notices to that recited in the *memorandum ;* yet, from these circumstances, he had no doubt that he delivered said notices to said *E. A. Mitchell,* on said day. According to the cases below cited, this was competent evidence to prove such notice of non-payment to *S. M. & G.* 2 *Phill. Ev.* 752. by *Cowen & Hill.* *Miller* v. *Hackley,* 5 *Johns. Rep.* 375. *Bank of Monroe* v. *Culver* & al. 2 *Hill,* 531.

As to the post-mark of the 22nd of *May,* on the letter containing notice, it is evidence that the letter was *mailed* and sent, rather than that it was merely put into the post-office,

on that day ; the object of the post-mark being to indicate the former, and not the latter.

*New-Haven,*
July, 1842.

With regard to the evidence offered by the plaintiff, to shew that the notice of protest on the *Aikin & Glass* note had been forwarded in due season, it does not appear, that it was objected to, by the defendants ; and therefore, we must infer, that it was permitted to go to the jury, by consent of the parties. Whatever we might think, as to the admissibility of the evidence, if it had been resisted, the defendants, in order to have the benefit of the question, ought to have made an objection to the evidence, and raised distinctly the point of its admissibility or effect. After the parties have voluntarily left it to the jury to infer from the circumstances, which, perhaps, if objected to, would be considered insufficient for that purpose, whether a particular fact existed, they cannot properly call on this court to interfere with the result.

The New-
Haven County
Bank
*v.*
Mitchell.

The superior court, therefore, should be advised, that a new trial ought not to be granted.

In this opinion the other Judges concurred, except HINMAN, J., who gave no opinion. (*a*)

New trial not to be granted.