Eliza Cunningham. [Seal.]
"Agnes A. Becker. [Seal.]
"Frederick G. Murphy. [Seal.]

"Sealed and delivered in the presence of Edward F. Davenport."

There is no proof tending in the slightest degree to impeacn the genuineness of these instruments. In addition to this, it was testified by the defendant that his mother advanced these sums to Frederick G. on account of the legacy. If this testimony be true,—and there is nothing legally sufficient to overthrow it,—then Frederick has received all of the interest to which he was entitled in his brother's estate. The fact that the defendant still retains the trust fund in his hands does not inure to the benefit of the plaintiff. It is quite true that the defendant may not profit out of the trust estate, but this does not entitle a stranger to any interest therein to profit by it. Upon the proof as it stands, the interest is clearly in the estate of the mother, and those entitled to take therefrom. To say that the recital in the receipt does not mean the estate of Thomas J., but his father, is to make the wildest conjecture. It is quite true that at the time when the payment was made there was a contingency of issue from Frederick G., which would have defeated the effect of the payment to him. Of this condition the mother evidently took the chance. As no issue was left, it is quite as strong in favor of the view that she then knew there was no likelihood of there being any, as to say that she would not do so unreasonable a thing. We think no inference can be indulged, based upon such view, sufficient to overthrow the written evidence. Nor does the plaintiff derive benefit from the judgment construing the will. The only effect of that decision was to determine that the interest of Thomas J. was vested in the remainder, and, having decided that, to direct payment over. But the interest of the plaintiff therein, or of any other person, was not determined. That was left to be established by this action, and the plaintiff has failed of showing any interest. The court below was right in directing the judgment which it did. It should therefore be affirmed.

Judgment affirmed, with costs. All concur.

---

PERSONS et al. v. KRUGER et al.

(Supreme Court, Appellate Division, Fourth Department. November 22. 9.)

1. PLEADING—OBJECTION TO COMPLAINT.
   Where the answer contains no averment that there is a defect of pa es. defendant may not question the sufficiency of the complaint on the rial on account of such defect.

2. BILLS AND NOTES—NOTARIAL CERTIFICATE—ADMISSIBILITY IN EVIDENCE.
   Under the statute of Pennsylvania providing that the protests and attestations of notaries public, properly certified by them, in respect to the

dishonor of all bills and notice to the drawers or indorsers thereof, may be read in evidence as proof of the facts stated therein, the certificate of a notary in Pennsylvania is admissible to prove protest for nonpayment and notice in that state in an action against an indorser brought in New York.

3. SAME—NOTICE OF PROTEST—SERVICE ON AGENT.
Service of notice of protest on the agent of an indorser on a draft was sufficient to charge the latter where the agent was authorized by power of attorney to make and indorse drafts, checks, etc., and acted as general agent for defendant in all his business with plaintiff bank, and had full charge of all his dealings with the bank, and indorsed the draft in suit for his principal.

4. SAME—NOTICE OF PROTEST—PROOF OF SERVICE.
In an action against the indorser of a draft, proof that the notice of dishonor which was returned to plaintiff bank, to which the draft had been negotiated by defendant, was mailed to defendant in the usual course of the bank's business, is sufficient to justify a finding of service of notice, where defendant was not sworn as a witness, and did not file an affidavit that no notice was received pursuant to Code Civ. Proc. § 923, making a notarial certificate of service of such a notice presumptive evidence of the facts certified unless defendant files an affidavit of denial.

Appeal from trial term.

Action by Henry H. Persons and another, as receivers of the Bank of Commerce in Buffalo, against Edward H. Kruger, impleaded, etc., on a draft indorsed by defendant. From a judgment for plaintiffs, defendant Kruger appeals. Affirmed.

On the 3d of December, 1896, the Bank of Commerce was dissolved by a judgment of the supreme court, and the plaintiffs were appointed receivers, and, having given a proper bond, duly qualified as such, and entered into possession of the assets of the said bank, and continued to occupy the building of the Bank of Commerce as their office, and to use the mail box at the post office from which the mail for the bank was taken by the janitor, the same as before the failure.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

C. J. Church, for appellant.
Norris Morey and Edward R. Bosley, for respondents.

HARDIN, P. J. Plaintiffs' complaint alleges that on October 13, 1896, at the city of New York, the defendant Buffalo City Mills, Limited, made its draft or bill of exchange, in writing, for value received, by its duly-authorized agent and manager. Said draft was dated on October 13, 1896, and was for $450, and drawn, payable three months after date, to the order of E. H. Kruger & Co., and addressed to Messrs. Lovegrove & Co., No. 143 North Third street, Philadelphia. It is alleged that the drawer delivered the draft to the drawee, and that on the 16th of October, 1896, Lovegrove accepted the draft, in writing, and that the acceptance was made by Lovegrove "under his firm name of Lovegrove & Co." It is averred that "thereafter the said draft was duly indorsed, and delivered, before maturity, and for value received, by the defendant Kruger, the payee therein named, under his firm name of E. H. Kruger & Co., by his duly-authorized agent and attorney, to the Bank of Commerce in Buffalo." It is also alleged that on January 13, 1897, when the draft became due, "it was duly presented for payment to the

defendant Lovegrove by a notary public, and payment thereof demanded; that payment of the whole or any part thereof was refused, whereupon, on said day, it was protested for nonpayment, and notice of such presentment, demand, nonpayment, and protest served upon each of the defendants." It is further averred that the Bank of Commerce in Buffalo was, and that these plaintiffs, since their appointment as receivers, have been, and now are, the owners and holders of said draft. In the amended answer of the defendant Kruger he denies "that he is the sole member of the firm of Edward H. Kruger & Co., doing business at Elizabeth City, in the state of North Carolina," and also makes several other denials not important to be stated. Among other allegations found in his answer is the following:

"And the said defendant Edward H. Kruger, for a further and separate answer, and defense, herein alleges and shows to the court on information and belief that all of the business done under the name of Edward H. Kruger, or E. H. Kruger & Co., in connection with the making, indorsing, and delivering of any and all promissory notes or drafts set up in the complaint, was done and transacted, using the designation '& Co.,' with no actual partner or partners represented thereby."

The answer also contained allegations relating to a counterclaim, which counterclaim was withdrawn before the trial. The answer contained no averment that there was a defect of parties, and the defendant Kruger was not in a situation to question the sufficiency of the complaint upon the trial. Persons v. Kruger, 39 App. Div. 416, 57 N. Y. Supp. 416. The draft mentioned in the complaint was produced and offered in evidence, and the signatures to the same were duly shown to be genuine. It is found as a fact that, after the draft was accepted by the drawee, "the said draft was duly indorsed and delivered, before maturity, and for value received, by the defendant Edward H. Kruger, the payee therein named, under the name of E. H. Kruger & Co., by his duly-authorized agent and attorney, to the Bank of Commerce in Buffalo." The evidence produced at the trial satisfactorily established the fact thus stated. It was further found:

"That when said draft became due and payable, to wit, on or about January 13, 1897, it was duly presented for payment to the drawee and acceptor thereof, to wit, Lovegrove & Co., by a notary public, and payment thereof demanded; that payment thereof, or of any part thereof, was refused, whereupon the said draft was, on said date, duly protested for nonpayment, and notice of said presentment, demand, nonpayment, and protest was duly given to the defendant Edward H. Kruger."

Upon the trial some evidence was given tending to show the statutes of Pennsylvania in respect to demand, protest, and notice of commercial paper. Upon the argument the respondents were allowed to furnish an exemplified copy of the statute of Pennsylvania, and an exemplified copy relating to authentication of letters of attorney and protests of notaries public has been submitted. In the second section of the act we find the following provision:

"That the official acts, protests and attestations of all notaries public, certified according to law, under their respective hands and seals of office, in respect to the dishonor of all bills and promissory notes, and of notice to the drawers, acceptors or endorsers thereof, may be received and read in evidence

as proof of the facts therein stated, in all suits now pending or hereafter to be brought: provided, that any party may be permitted to contradict by other evidence, any such certificate." P. L. 1855, p. 724.

We think the plaintiffs were properly allowed to read in evidence the notarial certificate executed by William J. P. Allen, notary public, of the 13th of January, 1897, relating to the paper in issue, and that, pursuant to the statute of Pennsylvania, the certificate was prima facie "proof of the facts therein stated." Under the Pennsylvania statute the defendant was at liberty "to contradict by other evidence" such certificate. In this state, by section 923 of the Code of Civil Procedure, the certificate of a notary public under his hand and seal of office is allowed to establish the presentment by him for acceptance or payment, or of the protest for the nonacceptance or nonpayment of a promissory note or bill of exchange, and of the service of notice thereof on the party to the note or bill, and to specify the mode of giving the notice, the reputed place of residence of the party to whom it was given, and the post office nearest thereto; and such certificate is declared to be "presumptive evidence of the facts certified, unless the party against whom it is offered has served upon the adverse party, with his pleading, or within ten days after joinder of an issue of fact, an original affidavit to the effect that he has not received notice of nonacceptance or of nonpayment of the note or bill." No affidavit was made by the defendant or by Brown to the effect that no notice had been received of the protest of the paper in question. Nor was any evidence given on the trial by the defendant Kruger as a witness, or Brown as a witness, that the notice of protest alleged to have been served was not received. Cuming v. Roderick, 28 App. Div. 253, 50 N. Y. Supp. 1053, does not aid the contention of the appellant, as in that case, after the notary's certificate of protest was introduced in evidence by the plaintiff, "he allowed the indorser, without objection or exception, to testify that notice of protest had not been received by him."

Upon the trial, a power of attorney, purporting to be executed by the firm of E. H. Kruger & Co., was produced, and read in evidence, and by that power of attorney it appeared that Andrew Brown was constituted attorney to make and sign all notes, drafts, bills of exchange, checks, contracts, and other commercial or money obligations, to accept and indorse drafts, indorse checks, notes, and all and every form of obligation which the said firm can execute, giving and granting unto said Brown full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises. That power of attorney was signed and dated on the 10th day of May, 1892, and was executed with the signature of E. H. Kruger & Co. On that day Edward H. Kruger appeared before a notary public, who certified to the fact of such appearance, and that such Kruger was "known to me to be a member of the firm of E. H. Kruger & Co., and acknowledged the above letter of attorney to be their act and deed." The evidence given in connection with the power of attorney fully indicated that Brown acted as the general agent of Kruger in carry-

ing forward the business transacted by him with the Bank of Commerce, and had full charge of the acts and dealings with the bank, and the management of the paper which had been discounted by the bank at the instance of Brown for and in behalf of the appellant Kruger. We think the evidence warranted the court in finding that service of notice of protest upon Brown was sufficient, as he was the agent who indorsed the paper for the defendant Kruger. In Firth v. Thrush, 8 Barn. & C. 387, the opinion was expressed that authority to indorse negotiable paper carried with it authority to receive notice of its dishonor. We think the Bank of Commerce had the right to presume that the draft which is the subject of this action was business paper such as it had been in the habit of discounting for defendant Kruger, and that the notice of protest given to Brown was to the agent of the appellant, and that the evidence warranted a finding of a general agency on the part of Brown. Bank v. Putnam, *42 N. Y. 343; Hubbard v. Matthews, 54 N. Y. 44. The latter case was approved and cited in Fassin v. Hubbard, 55 N. Y. 465. See, also, Lake Shore Nat. Bank v. Butler Colliery Co., 51 Hun, 68, 3 N. Y. Supp. 701.

2. Notwithstanding the finding made by the trial court that payment of the draft was refused, "whereupon the said draft was on said date duly protested for nonpayment, and notice of said presentment, demand, nonpayment, and protest was duly given to the defendant Edward H. Kruger," it is contended in his behalf that the evidence was insufficient to establish the fact of notice. As we have before seen, the notary in Philadelphia presented the draft, and made a demand, and issued notices of its dishonor; and in his certificate, which was received in evidence, stated that:

"Notice of the foregoing demand, nonpayment, and protest, partly written and partly printed, signed by me, and folded in the form of letters, as follows, viz.:

| | | |
|---|---|---|
| "Notice for Buffalo City Mills, L't'd Directed. | Enclosed to Bank of Commerce in Buffalo, |
| do. for A. Brown, Mgr. | Buffalo, N. Y. |
| *      *      *      * | *      *      * |
| do. for ppro. E. H. Kruger & Co., A. Brown, Atty. Directed. | Enclosed to Bank of Commerce in Buffalo, Buffalo, N. Y." |

Mr. Persons, one of the receivers of the Bank of Commerce, was called as a witness, and he was asked whether he was able to say "whether or not any notice of protest received from the notary public at Philadelphia for E. H. Kruger & Co. was forwarded," and he answered, "It was." He was then asked if he had any recollection of the fact that this draft was not paid when it was due, and he answered, "I have." He was then asked to detail the course of business as to the mailing of letters, correspondence, and notices of all kinds by the receivers. He answered, viz.: "The mail was put in an envelope, addressed, and put in a box, or left on my desk, and the janitor put stamps on and took it to the office. The janitor was John Dover." The witness added that the same course was taken with letters that were laid upon his table; and, continuing, he said: "The letters were left on my desk, or put in a general box,—

a mail box that hung just at the side of one of the cages in the bank,
—and it was Dover's business to take that mail and carry it to the
office. If there wasn't any stamps on the envelopes when he took
them out of the box or off of my desk, he was to put them on, and
take the mail, and carry them over, and put them in the office. Q.
That was the United States post office, here on Seneca street? A.
That was the place it was to go." The plaintiff called Walsh as a
witness, who testified that he had looked over the memorandum
of the Lovegrove paper being returned from Philadelphia, and added:
"After refreshing my recollection, that enables me to recollect the
fact that the paper did come back, and the notice for Kruger & Co.
Q. State what was done with the notice of Kruger & Co. A. It was
probably mailed." He was then asked the following questions: "Q.
What is your recollection, after being refreshed by this memoran-
dum, and from your knowledge of the business course that was car-
ried on there,—what is your recollection as to what was done with
that notice? A. Put in an envelope, and mailed to Box 811, P. O
New York City. Q. What was the course of business as to the mail-
ing of all mail matter from the receiver's office? A. It was inclosed
in an envelope, sealed, and put on the receiver's desk, or in the mail
box, and taken over to the post office by the janitor." He adds that
stamps were put on at the request of the receivers. The plaintiff
then called John Dover, who had been employed in the bank, prior
to the suspension of business, as janitor and messenger, for 12 years,
and he testified that he remained with the receivers after they came
into the bank, and went after the letters for the bank, and brought
them from the post office to the bank; and he adds: "I collected the
letters for the mails,—to go out in the mails; stamped them that
wasn't stamped. If I found any letters that wasn't stamped, I
stamped them. I had access to the stamps to do such things, and
mail them. To mail them, I bundled them up, and carried them over
to the United States post office on Seneca street. I always did that
with letters for the mail while I was in the employ of the receivers."
Subsequently the witness Walsh was further cross-examined, and
gave such circumstances as were recalled by him, and in the course
of his redirect examination he said: "My recollection is that I saw
the notice of protest, or draft, returned, and spoke to one of the em-
ployés of the bank, expressing surprise. I remember the circum-
stances of it being received, and marking it 'Protest' on the tickler,
and my speaking to some one about it. It was my duty to mail
those notices of protest to the indorser, Kruger & Co., or to Andrew
Brown. Mr. Clark, the bank examiner in charge at that time, im-
posed that duty upon me." The witness was then asked, "State
what was the form of the notice of protest forwarded for Kruger &
Co. to New York," and the witness answered, "It was the usual form
of notice." The witness added that he had been in the banking
business, and accustomed to seeing notices of protest, for some 14
years, and thereupon he was asked the following question: "Q.
What is your best recollection now, after having seen that memoran-
dum, and after having your recollection refreshed, as to whether or
not you did forward that notice,—mailed it, and put the postage on

it? A. I think I mailed the notice the day of its receipt, after marking it 'Returned' on the discount tickler. Q. Is that usually the course of business? A. Yes, sir. Q. After the receivers came in, did you have the same duty about forwarding notices of protest? A. Yes, sir." We think the evidence supports the finding of fact made by the trial judge, that notices were given.

In volume 3, Randolph on Commercial Paper (section 1312, p. 364), it is said:

"The evidence of the bank officers as to the invariable course of business of the bank, to the effect that notice must have been sent, has been held to be sufficient to go to the jury, although the witness had no recollection of the particular matter."

In section 1314 the same learned author says:

"The sufficiency of the evidence, as well as its credibility, should be left to the consideration of the jury; and their conclusion as to the facts is sufficient to support the verdict, although it may differ from the opinion of the court as to such facts."

It must be borne in mind that there is no affidavit denying receipt of the notice, and, under such circumstances, we think the evidence given tending to show that notice was sent should be liberally construed.

In McLean v. Ryan, 36 App. Div. 281, 55 N. Y. Supp. 232, it was said:

"An indorser can always compel the production of common-law evidence against him to prove the service of notice by an affidavit denying receipt of notice. For that reason, where the indorser is unwilling to make such an affidavit, the courts are inclined to construe the notarial certificate with great liberality,"—citing Bank v. Neass, 3 N. Y. 442.

In 2 Edw. Bills & N. § 987, where a notary had testified that he had no doubt notice was given, though at that distance of time he could not recollect positively, and that it was possible he might have given the notice to the holder to forward, the author says:

"This evidence, say the court, was certainly sufficient, in the first instance, to support the averment of due notice, and, there being nothing to affect it, it will support the verdict." See, also, section 188.

In Bank v. Stone, 50 Me. 595, the notary testified that he was in the habit of delivering notices to S., and S. testified that he was in the habit of delivering notices for the notary, and that he seasonably delivered to the parties to be notified all notices handed him for delivery, but had no definite recollection of doing so in the present instance; and it was held by the court that this testimony was sufficient.

In Daniel on Negotiable Instruments (volume 2, § 1056), it is said:

"Where a notary testified that 'it was usual for him to send notices of dishonor on the evening of the day of protest, and he had no doubt it was duly done in this instance,' it was held sufficient evidence of notice."

See, also, Miller v. Hackley, 5 Johns. 375; Bank v. Mitchell, 15 Conn. 206; Daniel, Neg. Inst. (4th Ed.) § 1054, where it is said, viz.:

"When the mail is the proper channel for the communication of notice, it is not necessary to show the distinct fact that the particular letter containing the notice was put in the mail by ocular evidence thereof. Proof that notice was put with letters for the post office by one clerk, and that the letters of that

day were deposited by another clerk, would be sufficient. And it would like-wise be sufficient that it was put with letters customarily made up in the usual course of business for the postman, and that he invariably carried all the letters found upon the table."

The trial court having found the essential fact upon evidence which we believe to be sufficient to support its finding, it is our duty to sustain the conclusion drawn by the trial judge from the evidence, and sustain his finding of fact in respect to the service of notice, and the judgment should be sustained.

Judgment affirmed, with costs. All concur.